J-S81017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 758 EDA 2016 |

Appeal from the Decree February 10, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000031-2016,
FID: 51-FN-001509-2012

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.S.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 759 EDA 2016 |

Appeal from the Decree February 10, 2016
in the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000063-2016,
FID: 51-FN-001509-2012

BEFORE:  BOWES, MOULTON, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY MOULTON, J.:              **FILED JANUARY 10, 2017**

K.S.S. ("Mother") appeals from the decrees of the trial court dated

February 10, 2016, granting the petitions filed by the Philadelphia

_____

* Former Justice specially assigned to the Superior Court.

Department of Human Services ("DHS") to involuntarily terminate her parental rights to her children, K.S.D., a female born in June 2004, and K.S.T., a male born in September 2005, (collectively, "Children"), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8) and (b), and finding the adoption of Children may continue without further notice to or consent of Mother, pursuant to the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

The trial court set forth the factual background and procedural history of this appeal, as follows.

> On May 7, 2012, DHS received a Child Protective Services (CPS) report, which alleged that K.S.T. was physically assaulted by his mother, K.S.S., on May 6, 2012.  The allegations indicated K.S.S. struck K.S.T. on the nose, which caused his nose to bleed; that when K.S.T. arrived to school, a noticeable blood stain was visible on the front of his jacket; and that K.S.S. was the caregiver for K.S.T. and his sibling, K.S.D.  The report was substantiated.
>
> Furthermore, on May 15, 2012, DHS received a General Protective Services Report (GPS) report which alleged that K.S.T. had been diagnosed with autism; that K.S.T. arrived at school with physical signs of diarrhea on his person and while his clothes were being changed, it was observed that K.S.T. had sustained linear and circular bruises on the left side of his back, his right forearm, his right thigh, and his

---

[1] In separate decrees dated and entered on February 10, 2016, the trial court involuntarily terminated the parental rights of K.S.T.'s father, A.O.T., a/k/a A.T., a/k/a U.T., and K.S.D.'s father, A.M.D., a/k/a T.D., a/k/a A.D., as well as any unknown father(s), pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b).  Neither of these named men, nor any unknown father, has filed an appeal from the decree terminating his parental rights, nor are they parties to the present appeal.

knee; and that the injuries to K.S.T.'s back were red and appeared to be fresh. It was further alleged that K.S.T. denied being physically assaulted by anyone. There were concerns that K.S.S. used corporal punishment as a form of discipline. The report was substantiated.

Moreover, on May 15, 2012, DHS met with K.S.T. at school to examine and interview him. DHS observed welts and bruises on K.S.T.'s entire body and photographs were taken of the injuries. Initially, K.S.T. refused to disclose how he received the injuries. The same day, DHS went to K.S.S.'s home and met with K.S.S., who was obstinate and very emotional. K.S.S. appeared to find it challenging to control her behavior. DHS advised K.S.S. that K.S.T. and K.S.D. would have to be removed from the home until DHS completed its investigation. K.S.S. was unable to identify appropriate family resources that could care for the children. Later, when K.S.T was alone with the DHS social worker, K.S.T.[] confirmed that mother had hit him several times. Further, both children reported to DHS that they were fearful of remaining in the home with K.S.S.

Subsequently, on May 15, 2012, DHS obtained an Order of Protective Custody (OPC) for K.S.T. and K.S.D. and placed them in treatment foster care through Elwyn, an agency contracted through DHS.

A shelter care hearing was held on May 17, 2012, before the Honorable Vincent L. Johnson. Judge Johnson found that sufficient evidence was presented to find that K.S.T. and K.S.D's continuation or return to K.S.S.'s home would not be in the best interest of the children. Further, Judge Johnson lifted the OPC and the temporary commitment to DHS was ordered to stand.

On May 24, 2012, an adjudicatory hearing was held before the Honorable Vincent L. Johnson. Judge Johnson adjudicated K.S.T. and K.S.D. dependent and committed them to the care and custody of DHS.

Shortly thereafter, DHS held a Family Service Plan (FSP) meeting. The objectives identified for [M]other, K.S.S., were: 1) visitation; 2) housing; 3) employment; 4) to seek out community supports for parenting; 5) therapy; 6) psychiatric evaluation; 7) clearance of household members; 8) home evaluation; 9) to fully comply with FSP

objectives; and 10) drug and alcohol [evaluation and tests].

On October [sic] 2012, K.S.S.'s weekly supervised visits at Elwyn Treatment Foster Care ended due to K.S.S.'s reportedly inappropriate behavior during her visits with K.S.T. and K.S.D.

On March 13, 2013, K.S.S. participated in a Parenting Capacity Evaluation at Assessment and Treatment Alternatives (ATA). For reunification to occur, Dr. William Russell, licensed psychologist and evaluator, recommended that K.S.S. was to comply with the objectives set forth in the initial FSP meeting held in the instant matter.

On July 16, 2013, a permanency review hearing for K.S.T. and K.S.D. was held by the Honorable Vincent L. Johnson[.] [T]he Court made a finding that K.S.T and K.S.D. were victims of child abuse by their mother, K.S.S. Moreover, Judge Johnson ordered a No Contact Order for K.S.S. be put in place except at the therapists' recommendation and the children's discretion. From this time on, the therapist never recommended visits with K.S.S. and no visits occurred.

The matter was then listed on a regular basis before judges of the Philadelphia Court of Common Pleas - Family Court Division - Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. §6351, and evaluated for the purpose of . . . reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Revie[w] Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On February 10, 2016, a Termination of Parental Rights hearing for K.S.T. and K.S.D. was held on the matter. The Court found by clear and convincing evidence that [M]other's parental rights of K.S.T. and K.S.D. should be terminated . . . pursuant to the Pennsylvania Juvenile Act.

Furthermore, the Court held it was in the best interest of [Children] that the goal be changed to adoption.

- 4 -

Tr. Ct. Op., 3/28/16, at 1-4 (unpaginated).

At the hearing,[2] the Child Advocate presented the testimony of Lauren Griesser, the Children's Crisis Treatment Center ("CCTC") trauma therapist for K.S.D. *Id.* at 23-24. The Child Advocate then presented the testimony of Harry Allen, the director of outpatient services and specialized services at Northeast Treatment Center ("NET"). *Id.* at 55. Mr. Allen testified that K.S.T. was referred to NET for therapy regarding his diagnosis for autism. *Id.* 59-60.

Mother testified on her own behalf. *Id.* at 97. She stated that she loves Children with all her heart. *Id.* at 110. The trial court also admitted a number of exhibits introduced by DHS and the Child Advocate. At the close of the testimony at the February 10, 2016 hearing, the trial court involuntarily terminated the parental rights of Mother and the named fathers and found the adoption of Children may continue without further notice to or

---

[2] The trial court first addressed the termination of the parental rights of K.S.D.'s father, A.M.D., a/k/a T.D., a/k/a A.D. N.T., 2/10/16, at 9-10. He was not present at the hearing, but was represented by counsel. *Id.* DHS presented the testimony of Wanda Ross, the DHS caseworker assigned to the case. *Id.* at 10. The trial court terminated his parental rights on the record. *Id.* at 15.

Further, K.S.T.'s father, A.O.T. a/k/a A.T., a/k/a U.T., was not present, but was represented by counsel. *Id.* at 75-83. He was presently incarcerated at the State Correctional Institution ("SCI") Forest at Marienville, Pennsylvania. *Id.* at 76-77, 83.

consent of Mother or named and unnamed Fathers. *Id.* at 121-129. The trial court entered its decrees that same date.

On March 4, 2016, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), from the decrees. This Court, acting *sua sponte*, consolidated the appeals on April 29, 2016. On appeal, Mother raises five issues, as follows:

> 1. Whether the Trial Court erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. §2511(a)(1)?
>
> 2. Whether the Trial Court erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. §2511(a)(2)?
>
> 3. Whether the Trial Court erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. §2511(a)(5)?
>
> 4. Whether the Trial Court erred by terminating the parental rights of [Mother] under 23 Pa.C.S.A. §2511(a)(8)?
>
> 5. Whether the Trial Court erred by finding, under 23 Pa.C.S.A. §2511(b), that termination of [Mother's] parental rights best serve [sic] the children's developmental, physical and emotional needs and welfare?

Mother's Br., at 5 (Statement of the Questions Involved - unpaginated).[3]

---

[3] Mother stated her issues somewhat differently in her concise statements. As Mother challenged the trial court's finding as to section 2511(b), we will not find that Mother waived her challenge to the trial court's section 2511(b) bond analysis for failure to specifically preserve such challenge in the concise statements and Statement of Questions Involved portion of her brief. *See* Mother's Brief, at 16-17 (Issue 3 and Standard of
*(Footnote Continued Next Page)*

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; [*In re R.I.S.*, 36 A.3d 567, 572 (Pa. 2011)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel–Bassett v. Kia Motors America, Inc.*, [613] Pa. [371], 34 A.3d 1, 51 (2011); *Christianson v. Ely*, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore,

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Proof regarding Section 2511(b) - unpaginated), and 18 (Conclusion - unpaginated). *Cf. Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in her brief on appeal). We find, however, that Mother waived any challenge to the change in permanency goal to adoption by her failure to preserve that issue in her concise statements and Statement of Questions Involved in her brief. *See id*.

> even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner "to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Mother argues that the trial court erred in finding that DHS presented sufficient evidence to support the termination of her parental rights under section 2511(a)(1), (2), (5), and (8). ***See*** Mother's Br., at 10 (Summary of Argument - unpaginated).[4] This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384

---

[4] Mother's unpaginated page 10 reflects that it is page 8. It is the only numbered page after page 3, and appears to be erroneously numbered.

(Pa.Super. 2004) (*en banc*). We will focus on sections 2511(a)(1), (2), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

With respect to subsection 2511(a)(1), our Supreme Court has held as follows.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights,

- 9 -

the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998).

Further, this Court has stated:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-855 (Pa.Super. 2004) (citations omitted).

With regard to section 2511(a)(1), the trial court found as follows:

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for [Children]. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant case, during the FSP meeting held on July 28, 2015, for K.S.S., K.S.T. and K.S.D[.], it was noted that K.S.S. had not progressed in her FSP permanency objectives in a way that would foster reunification with her children. Furthermore, reunification with K.S.S. is not a viable permanency option for K.S.T. and K.S.D., as K.S.S. has failed to improve the circumstances that led to the K.S.T. and K.S.D.'s placement. (N.T. 2/10/2016, pp. 37, 41-43). Specifically, K.S.S. continues to minimize the extent of her abuse on her children. (N.T. 2/10/2016, pp. 29, 31, 41, 42).

While, K.S.S. insists that the abuse only occurred sometimes, K.S.T. recalls that the abuse occurred consistently. (N.T. 2/10/2016, pp. 29, 31, 41, 42). Most

- 10 -

vividly and repeatedly, K.S.T. recalls his mother choking him. (N.T. 2/10/2016, pp. 52, 62). According to the therapist, this discrepancy indicates that K.S.T. has experienced a high level of trauma at the hands of K.S.S. Furthermore, at K.S.T[.]'s intake at Children's Crisis Treatment Center (CCTC), it was observed that K.S.T. was "jumpy when people raised their voices; always want[ed] to be near K.S.D[.]; act[ed] afraid that he would be hit; smear[ed] feces; [and exhibited a] history of withdrawal from interaction with others." (CCTC Center Based Treatment Plan).

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent - child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A.. II*, 453 Pa. Super. 106, 683 A.2d 297, 302 (1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent - child relationship, and must demonstrate a[] willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (1999) (quoting *In re Adoption of Hamilton*, 379 Pa. Super. 274, 549 A.2d 1291, 1295 (1988)).

In the instant case, the children have been in placement for at least sixteen months. The testimony established that both children are now in a positive environment. (N.T. 2/10/2016, pp. 54, 67). K.S.T. has only seen K.S.S. one time since he has been in placement, and although he has asked about K.S.S., he has never expressed a desire to see her. (N.T. 2/10/2016, pp. 54, 67). Moreover, due to the unhealthy relationship K.S.S. formed with K.S.D., K.S.D. still suffers from a high level of trauma. (N.T. 2/10/2016, pp. 37. [sic] 39, 40, 42).

The record reflects that K.S.S. has not met her duty to maintain a healthy parent-child relationship with her children. (N.T. 2/10/2016, pp. 37, 41-43). Although[] a no contact order was in place, K.S.S. still had therapeutic sessions with the therapist who was working toward

possible reunification with K.S.S. and her children, which in part required K.S.S. to reach the level of acknowledgement where she took full responsibility for her abuse of K.S.T and K.S.D. (N.T. 2/10/2016, pp. 29-31). But, K.S.S.[] never obtained that level of responsibility during the almost four (4) years that K.S.T. and K.S.D. have been in care. (N.T. 2/10/2016, p. 8).

Tr. Ct. Op., 3/28/16, at 5-6.

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of S.P.***, 47 A.3d at 826-27. We affirm the termination of Mother's parental rights under section 2511(a)(1) on the basis of the discussion in the trial court opinion.

Next, to satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa.Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal and

- 12 -

incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002).

In its opinion, the trial court stated as follows:

> As of the June 5, 2014, permanency review hearing, the children had been in care for twenty four (24) months, and K.S.S.'s visits were still suspended. (N.T. 2/10/2016, p. 30). Although[] it was noted that K.S.S. had engaged in some mental health treatment and had begun parenting classes, by the July 28, 2015 FSP meeting for K.S.T. and K.S.D., K.S.S. had not progressed in her FSP permanency objectives in a way that would permit reunification to occur. (N.T. 2/10/2016, pp. 37, 41-42).

Tr. Ct. Op., 3/28/16, at 7 (unpaginated).

Again, after a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27. We affirm the termination of Mother's parental rights under section 2511(a)(2) on the basis of the discussion in the trial court opinion.

Additionally, in relation to her arguments concerning section 2511(a), Mother asserts that Judge Johnson's July 16, 2013 "no contact" order precluded her from seeing Children, despite her completion of parenting classes, an anger management course, and, consistent with her mental health treatment, her acknowledgement of her role in Children's trauma. *See* Mother's Br., at 13 (unpaginated). Mother argues that DHS failed to provide reasonable efforts toward reunification between her and Children.

We find the argument lacks merit. *See In re D.C.D.*, 105 A.3d 662, 673, 675 (Pa. 2014) (holding trial court not required to consider reasonable efforts in relation to decision to terminate parental rights).

Next, in reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa.Super. 2008).

- 14 -

A parent's abuse and neglect are a relevant part of the section 2511(b) analysis. This Court has found that:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa.Super. 2008) (internal citations and quotation marks omitted). In fact, our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re T.S.M.*, 71 A.3d at 267 (quoting *In re K.K.R.-S.*, 958 A.2d at 535). The Supreme Court instructed, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re T.S.M.*, 71 A.3d at 267 (quoting *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418 (Pa. Super. 2003) (Tamilia, J. dissenting)).

Further, we have explained that a "parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d at 1121. This Court has stated: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d at 856 (internal citations omitted). Moreover, it is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

In its opinion, the trial court stated as follows:

> Pursuant to Section 2511(b), the trial court must take [into] account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000). In the instant matter, the testimony established that the children would not suffer irreparable emotional harm if the mother's parental rights were terminated. (N.T. 2/10/2016, pp. 53, 67, 68).
>
> The testimony of the therapist established that the child K.S.T., [sic] is in a foster home with a foster parent who is able and capable of meeting his needs, i.e., dealing with his trauma and the struggles that K.S.T. has with social skills. (N.T. 2/10/2016, pp. 62, 67). The therapist also noted that due to K.S.T.'s autism, it is important for him to

- 16 -

have a physically stable home and to be in an environment where there is consistency and predictability. (N.T. 2/10/2016, pp. 65, 66). According to the therapist, the current foster parent is able to provide such an environment and K.S.T. looks to the foster parent to provide for his daily needs. (N.T. 2/10/2016, p. 67). Accordingly, K.S.T. should be recommended for adoption, as it is in his best interest. (N.T. 2/10/2016, p. 68).

In regards to K.S.D., the therapist testified that she is forming a parent-child relationship with her current foster mother and that K.S.D. looks to her foster mom to meet her emotional needs. (N.T. 2/10/2016, p.38). Moreover, although the K.S.D.'s foster mother works full time, she is an excellent advocate for K.S.D., in that she makes frequent trips to K.S.D.'s school to ensure that K.S.D.'s needs are being met. *Id.* Further, K.S.D.'s foster mother consistently brings her to therapy and positively engages in therapy with K.S.D. *Id.*

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa.C.S.A. §2511 (a) & (b)[,] and that it was in the best interest of the children to change to goal to adoption. (N.T. 2/10/2016, pp. 124 - 126).

* * *

Furthermore, the court finds that its ruling will not cause K.S.T. or K.S.D. to suffer irreparable harm and it is in the best interest of the children[,] and[,] as a result of the testimony regarding the children's safety, protection, mental, physical and moral welfare to terminate [M]other's parental rights.

Tr. Ct. Op., 3/28/16, at 8-9 (unpaginated).

Further, the trial court found that Children had been removed from Mother's care since May of 2012, approximately four years, at the time of the hearing. This finding is sufficient upon which to base a conclusion that there was no bond between Children and Mother. *See In re K.Z.S.*, 946

A.2d at 763-764 (affirming involuntary termination of mother's parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests, and any bond with mother would be fairly attenuated when child was separated from her, almost constantly, for four years).

After a careful review of the record in this matter, we find the record supports the trial court's factual findings, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of S.P.***, 47 A.3d at 826-27. We, therefore, affirm the trial court decrees terminating Mother's parental rights pursuant to section 2511(b).

Accordingly, we affirm the decrees terminating Mother's parental rights to K.S.D. and K.S.T. and finding that adoption can occur without further notice to of consent of Mother.

Decrees and orders affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/10/2017

- 18 -